UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE (DKT. 2)**

### I.   Introduction

On January 15, 2026, Yefu Wang ("Petitioner") filed a petition for writ of habeas corpus ("Petition" (Dkt. 1)) and an Ex Parte Application for a Temporary Restraining Order and an Order to Show Cause ("Application" (Dkt. 2)). The Application seeks an order that Petitioner be released from custody forthwith, or in the alternative, that he be provided with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) with instructions that the immigration judge has jurisdiction to act to determine whether a bond should be issued. Dkt. 2 at 2. Pursuant to the bond, Petitioner could be released pending the completion of the pending deportation proceedings, for which an initial hearing is scheduled on January 29, 2026, and a subsequent one on July 8, 2026. Dkt. 2 at 2; Dkt. 2-4 at 5.

On January 16, 2026, an order issued setting a briefing schedule on the Application. Dkt. 5. Respondents timely filed their opposition to the Application on January 20, 2026 (the "Opposition"). Dkt. 7. Petitioner timely filed a reply in support of the Application on January 23, 2026 (the "Reply"). Dkt. 8. Based on a review of the briefing, it has been determined that this matter can be decided without oral argument and is taken under submission pursuant to Local Rule 7-15.

For the reasons stated in this Order, the Application is **GRANTED IN PART**.

### II.   Factual Background

Petitioner contends that he is a citizen of China who entered the United States in or about April 2023 without inspection by immigration authorities. Dkt. 1 ¶ 8; Dkt. 2-4 at 5. He also contends that he has a wife and a two-year-old daughter who live here, and that their daughter is a United States citizen. Dkt. 2 at 3. Petitioner states that he is the sole provider for his family. *Id*.

According to the US. Department of Homeland Security Form I-213 (Dkt. 2-4 at 5), on April 17, 2023, U.S. Border Patrol ("USBP") encountered Petitioner in the "Rio Grande border patrol sector," in Texas and issued to him an "I-862 Notice to Appear." Dkt. 2-4 at 5. Petitioner was then detained for approximately 11 days before being released on April 28, 2023. *Id.* Approximately two years later, on February 22, 2025, Petitioner was arrested and charged by the Los Angeles County Sheriff's Department ("LASD") with assault with a deadly weapon that was not a firearm, in violation of Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
|---|---|---|---|
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

Penal Code § 245(A)(1). *Id.* That charge was not pursued due to insufficient evidence, and Petitioner was released from custody by the LASD. *Id.*

When Petitioner reported to the Los Angeles Alternative Detention unit on November 25, 2025, in compliance with his immigration reporting requirements, he was arrested by immigration authorities. *Id.* He is currently being held at the detention center in Adelanto, California. Dkt. 1 ¶ 1.

Since Petitioner has been in detention, he claims that his daughter has suffered "severe separation anxiety and psychological distress." Dkt. 2 at 3. He states that she "calls for her father and has ceased eating and sleeping normally." *Id.*

As noted, Petitioner is scheduled for an initial hearing in connection with his removal proceedings on January 29, 2026. EOIR Automated Case Information, available at https://acis.eoir.justice.gov/en/. He has not been provided with a bond hearing. Dkt. 1 ¶¶ 4–5; 19.

### III. <u>Analysis</u>

    A.    Legal Standards

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Fed. R. Civ. P. 65(b) sets forth the standards for the issuance of a TRO. They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of the hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell* ("*Cottrell*"), 632 F.3d 1127, 1135 (9th Cir. 2011). *Cottrell* determined that this "serious questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors—irreparable harm and the public interest—must be established. See *Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

    B.    Application

Petitioner contends that he has been detained without a bond hearing in violation of 8 U.S.C. § 1226(a). Dkt. 1 ¶ 20. He seeks a TRO that would require Respondents to release him pending the completion of the immigration proceedings, or in the alternative, to require that he provided with an individual bond hearing before an immigration judge, with instructions that the immigration judge has jurisdiction under 8 U.S.C. § 1226(a) to consider whether a bond for Petitioner is appropriate pending the completion of the immigration hearings. Dkt. 2 at 2. The *Winter* analysis elements are addressed in the following discussion.

        1.    <u>Likelihood of Success on the Merits</u>

            a)    *Maldonado Bautista* Class

Petitioner contends that he is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). Dkt. 1 ¶ 20. Respondents concede that "Petitioner appears to be a member of the Bond Eligible Class . . . ." Dkt. 7 at 2.

The *Maldonado Bautista* class encompasses noncitizens who are in the United States without lawful status who: (1) entered the United States without inspection; (2) were not apprehended upon arrival; and (3) were not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security made an initial custody determination. 2025 WL 3713987, at *32.

As noted above, Petitioner's Form I-213 states that he entered the United States without inspection, which satisfies the first requirement of *Maldonado Bautista* class membership. Dkt. 2-4 at 4. According to Petitioner's Form I-213, it appears that USBP apprehended him on April 17, 2023, and released him on April 28, 2023. *Id.* If this is accurate, he may not be a member of the *Maldonado Bautista* class, which excluded those immigrants who were detained upon arrival in the United States.

Based on a review of the current record, Petitioner appears to satisfy the third *Maldonado Bautista* class requirement. Nothing in the present record shows that Petitioner was detained under 8 U.S.C. §§ 1225(b)(1) or 1231, nor do Respondents contend otherwise. *See* Dkts. 1, 2, 7. Under 8 U.S.C. § 1226(c)(1)(E), an immigrant who is "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title" and "arrested for . . . acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury" is subject to detention. Petitioner's Form I-213 states that Petitioner was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. 2-4 at 5. Although, as noted, the documents state that Petitioner was arrested on February 22, 2025, by the LASD and charged with assault with a deadly weapon that was not a firearm, it is unclear from the evidence that has been proffered whether this falls into any of the enumerated crimes under section 1226(c)(1)(E). Moreover, Petitioner was released due to "insufficient evidence." *Id.* Further, Respondents' concession that Petitioner appears to a member of the *Maldonado Bautista* class implies that he was detained under 8 U.S.C. § 1226(a), rather than section 1226(c).[1] Dkt. 7 at 2. Accordingly, Petitioner appears to satisfy the third requirement for class membership.

Based on the present evidence, Petitioner may not be a member of the *Maldonado Bautista* class because it appears that he may have been apprehended upon his arrival in the United States on or about April 17, 2023. Accordingly, based on the current record, Petitioner has not shown that he is likely to succeed on the merits based on his argument that he is a member of the *Bautista* class. However, that is not dispositive in the analysis of the requests for relief.

        b)        Due Process

Independent of whether Petitioner is a member of the *Maldonado Bautista* class, he also argues that his detention violates the Due Process Clause of the Fifth Amendment. Dkt. 2-1 at 2–3. Petitioner contends that because his Form I-213 falsely asserts that he does not have a spouse or child, it "cannot serve as a lawful basis for [his] detention . . . ." Dkt. 2 at 4. Respondents do not address or otherwise contest this argument. *See* Dkt. 7.

"[A]ll 'persons' within the United States, including [non-citizens]," have a right to due process, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "These due process rights extend to immigration proceedings, including final deportation orders." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091 (E.D. Cal. 2925) (citing *Zadvydas*, 533 U.S. at 693–94; *Denmore v. Kim*, 538 U.S. 510, 523 (2003)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Under *Matthews*, courts assess three factors in evaluating due process claims:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[1] 8 U.S.C. § 1226(a) "authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings" and entitles those noncitizens to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Given Respondent's concession that Petitioner was detained under this statute, an immigration judge has jurisdiction to consider whether a bond for Petitioner is appropriate pending the completion of the immigration proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

*Id.* at 335.

*First*, because Petitioner has apparently been present in the United States for more than two years (Dkt. 1 ¶ 8), he is entitled to the protections provided by the Due Process Clause. *Zadvydas*, 533 U.S. 678. Petitioner appears to have been apprehended in April 2023, but he was subsequently released, apparently subject to certain restrictions that included reporting requirements. *See* Dkt. 2-4 at 5. Under the federal regulations governing the release of noncitizens by immigration authorities, an immigrant may be released from custody if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Thus, Petitioner's release in April 2023 implies that it was determined at that time by the USBP that he did not pose a danger to the community and was not a flight risk. Although the "initial decision to . . . release [Petitioner] [was] discretionary, the government's subsequent release of [Petitioner] from custody creates 'an implicit' promise that [his] liberty will be revoked only if [he] fail[s] to abide by the conditions of [his] release." *Calderon v. Kaiser*, No. 25-CV-6695, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 40 U.S. 471, 482 (1972)). As such, Petitioner has a significant private interest that has been implicated by his detention. *See Doe v. Becerra*, 787 F. Supp. 3d at 1093.

*Second*, there is a significant risk that Petitioner has been deprived of this liberty interest due to error. Petitioner argues that the risk of erroneous deprivation of his liberty interest is high considering the misstatements as to his familial status on his Form I-213. *See* Dkt. 2 at 4. Nor is the basis for Petitioner's current detention clear from the record. As demonstrated by Petitioner's arrest while he was complying with his reporting to Enforcement and Removal Operations ("ERO") as part of his Alternatives to Detention ("ATD") program requirements, Petitioner appears to have been compliant for more than two and a half years. Dkt. 2-4 at 5. Although Petitioner was arrested by LASD on February 22, 2025, and then released, the current detention of Petitioner without notice or opportunity to be heard in light of the prior determination by Respondents that he "would not pose a danger to property or persons" poses a significant risk of an erroneous deprivation of Petitioner's liberty interest. *See Doe v. Becerra*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found not to be a danger or risk of flight . . . the risk of erroneous deprivation remains high.").

Additional procedural safeguards would likely reduce the possibility of such an erroneous deprivation of a right. Based on Petitioner's assertion that his daughter witnessed his arrest (Dkt. 2 at 3) and that his sudden detention occurred after he appeared to comply with his reporting requirements (Dkt. 2-4 at 5), there is a sufficient basis to infer that Petitioner did not receive any notice that he would be detained so that he could have been prepared to address such issues when he reported. Further, in its response to the Application, Respondents present no evidence to support the basis for Petitioner's detention. *See* Dkt. 7. Accordingly, it is reasonable to infer that, if Petitioner were provided notice and the opportunity for a hearing on whether he should be released on bond, Petitioner and Respondents could present the evidence necessary for an immigration judge to determine if Petitioner now poses a risk to the community or flight risk pending the completion of the deportation proceedings.

*Finally*, while providing Petitioner with a hearing as to whether he should be on bond during the immigration proceedings may impose administrative and burdens on Respondents, such burdens are substantially outweighed by Petitioner's liberty interests. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

take steps toward doing so; but its interest in doing so without a hearing is low."). These burdens are also likely to be less significant when Petitioner is already subject to removal proceedings before an immigration judge and was regularly reporting to ERO. See Dkt. 2-4. Thus, the third *Matthews* factor weighs in Petitioner's favor.

Accordingly, because Petitioner is likely to succeed on the merits of his due process claim, this factor supports granting certain of the requested injunctive relief.

      2.      <u>Irreparable Harm</u>

It is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical care in detention facilities, economic burdens on detainees and their families, and harms to children whose parents are detained. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner claims to be the primary source of financial support for other members of his family. Dkt. 2 at 3. He argues that, while he is in detention, his family faces emotional and financial stress. *Id.*; Dkt. 1 ¶ 22. These are harms and economic burdens that *Hernandez* recognized as "irreparable." 872 F.3d at 995.

Based on the foregoing, this factor supports granting certain of the requested injunctive relief.

      3.      <u>Balance of Equities and the Public Interest</u>

As to the balance of equities and public interest, these factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "It is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (quoting *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011)). Further, while Petitioner faces a significant infringement on his liberty interests, Respondents are likely to face delays or administrative costs by providing him with a hearing. "Faced with such a conflict between financial concerns and preventable human suffering, [there is] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Based on the foregoing, this factor supports granting certain of the requested injunctive relief.

            *            *            *

Because all of the *Winter* factors support granting certain of the requested relief, that is warranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00155-JAK (ADSx) | Date | January 27, 2026 |
|---|---|---|---|
| Title | Yefu Wang v. Warden, Adelanto ICE Processing Center, et al. | | |

Accordingly, it is unnecessary to conduct an analysis under *Cottrell.*

### IV.    Conclusion

For the reasons stated in this Order, the Application is **GRANTED IN PART**. Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of this Order. The immigration judge shall be advised that he has jurisdiction to consider whether a bond for Petitioner is appropriate pending the completion of the immigration proceedings. Petitioner may request in writing that a bond hearing be conducted before his upcoming hearing on January 29, 2026. *See* EOIR Immigration Court Practice Manual § 9.3.

Within eight days of the issuance of this Order, Respondents shall file a status report as to whether the bond hearing has occurred, and if not, the date for which it has been scheduled. If it has occurred, the report shall include a statement as to its outcome and the parties' respective and/or collective positions as to whether the habeas petition is moot. If released on bond, Petitioner shall not be re-detained unless Respondents demonstrate at a second bond hearing, by clear and convincing evidence, that he is a flight risk or danger to the community and that no conditions other than his detention would be sufficient to prevent such harm.

Further, Respondents are ordered to show cause why a preliminary injunction should not issue with respect to the relief that has been requested by Petitioner. *See* C.D. Cal. L. R. 65-1. Respondents shall file any written response to the Order to Show Cause ("OSC") no later than February 12, 2026. Petitioner shall file any reply no later than February 19, 2026. If either or both parties elect to rely on the current briefing with respect to the OSC, they shall file a corresponding notice on or before the due date of their respective briefs. Based on a review of the briefing on the OSC, a determination will be made whether to schedule a hearing on a preliminary injunction or to take the matter under submission.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | LC2 |